UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

___

ROBERT S. SWANTON,

        Petitioner,

     v.                                     Case No. 19-C-1824

BRIAN FOSTER,

        Respondent.

___

## DECISION AND ORDER DENYING PETITION FOR RELIEF UNDER § 2254

___

Having fully exhausted his state court remedies, Petitioner Robert S. Swanton seeks federal relief under 28 U.S.C. § 2254 from his state court conviction for first-degree intentional homicide with use of a dangerous weapon. Swanton was convicted in the Circuit Court for Racine County and sentenced to life in prison with the possibility of parole after 40 years. He alleges in his petition that incriminating statements he made to the police should have been suppressed because they were involuntary. For the reasons that follow, Swanton's petition will be denied.

## BACKGROUND

This case arises out of the death of Melissa Hansen, who was fatally stabbed multiple times. Hansen's body was found in her apartment by her sister on March 8, 2015. Dkt. No. 13-3 at 5. Investigators found a bloody jacket and shirt and bloody shoeprints in the apartment with Swanton's DNA on them. *Id.* Investigators also found that Hansen and Swanton had been in contact via phone calls and text messages the evening before Hansen's death. *Id.*

On March 7, 2015, the day before Hansen's body was found, Swanton had been found lying in a nearby street unresponsive and he was transported to the hospital. *Id.* After Hansen's

body was discovered and police learned of evidence linking Hansen to Swanton, officers went to the hospital and spoke with Swanton's mother, who gave them the clothes and shoes that Swanton was wearing on the night Hansen was killed. *Id.* Hansen's DNA was found on Swanton's shirt and one of his shoes. *Id.*

On March 8, 2015, the day Hansen's body was discovered, officers went to St. Mary's Hospital where Swanton was a patient to interview him. Dkt. No. 15-1 at 13. After an officer read Swanton the warnings mandated by *Miranda v. Arizona*, 384 U.S. 436 (1966), Swanton said he did not want to answer any questions and the officers left. Dkt. No. 15-1 at 15–16. Swanton was apparently released from the hospital to a mental health treatment center where on March 9, 2015, police executed a search warrant for Swanton's DNA. Police attempted to interview Swanton at that time but he again invoked his *Miranda* rights, and declined to make a statement. *Id.* at 17–18, 25–26.

On April 10, 2015, Swanton was arrested at his home and brought to the Racine Police Department where he was interviewed by Investigator Joseph Spaulding. *Id*. at 3–5, 19. At the beginning of the interview, the investigating officers told Swanton that this was his last opportunity to tell them his version of events. *Id.* Investigator Joseph Spaulding said:

> This is really the only opportunity that you are going to have to explain your side of things okay. After we leave here out of this room that's not going to happen. Once we leave this room and we are done talking to you, we are not going to try to talk to you and get your side of what happened. Because that's important to us.

Dkt. No. 16 at 16:22–16:44. Investigator Spaulding then read the *Miranda* warnings to Swanton, and Swanton agreed to answer questions. In the course of the interview that followed, Swanton confessed that he killed the victim by stabbing her multiple times. Dkt. No. 13-3 at 6, 16.

Prior to trial, an evidentiary hearing was held on whether Swanton's confession was admissible. Swanton claimed that police had failed to comply with *Miranda* and his confession

2

was involuntary. Following the evidentiary hearing, the circuit court held that the statement was voluntary and admissible. Dkt. No. 13-5 at 2. The case proceeded to trial where a jury found Swanton guilty of first-degree intentional homicide with use of a dangerous weapon. *Id.* On appeal, Swanton argued that the trial court had erred in admitting his statement. He claimed his confession was involuntary because police told him that the interview would be his last opportunity to tell his version of events, thereby suggesting that if he did not tell police what happened he would be unable to tell a jury later at trial. *Id.*

The Court of Appeals rejected Swanton's argument and affirmed his conviction. The court upheld the circuit court's determination that the statement was voluntary and admissible. The court was unpersuaded that police had engaged in coercive or improper conduct in securing Swanton's statement. Considered in context, the court interpreted the officers' representations to Swanton that this was his last opportunity to tell his side of the story as a statement that this was his last chance to tell police his side of the story. The court noted "[p]olice did not say, or even imply, that if Swanton did not tell them what happened he would be unable to tell a jury later at trial." Dkt. No. 13-5 at 3. The Wisconsin Supreme Court denied Swanton's petition for review on December 11, 2018, and Swanton filed his petition for federal relief under § 2254 on December 12, 2019.

## ANALYSIS

### A. Standard of Review

Swanton's petition for federal relief is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254. Under AEDPA, a federal court may grant habeas relief only when a state court's decision on the merits was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by" decisions from the United States

3

Supreme Court, or was "based on an unreasonable application of the facts." 28 U.S.C. § 2254(d); *see also Woods v. Donald*, 575 U.S. 312, 315–16 (2015). A state court decision is "contrary to . . . clearly established Federal law" if the court did not apply the proper legal rule, or, in applying the proper legal rule, reached the opposite result as the Supreme Court on "materially indistinguishable" facts. *Brown v. Payton*, 544 U.S. 133, 141 (2005). A state court decision is an "unreasonable application of . . . clearly established federal law" when the court applied Supreme Court precedent in "an objectively unreasonable manner." *Id.*

A state court decision is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" when it is so clearly incorrect that it would not be debatable among reasonable jurists. *Brumfield v. Cain*, 576 U.S. 305, 314 (2015) ("If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's . . . determination." (internal quotations and brackets omitted)). The determination of a factual matter made by a state court is presumed to be correct, and that presumption can be overcome only by clear and convincing evidence. § 2254(e)(1); *Janusiak v. Cooper*, 937 F.3d 880, 888 (7th Cir. 2019) ("The petitioner must show by clear and convincing evidence that the findings were unreasonable."). Although habeas courts cannot "second-guess the reasonable decisions of state courts," *Renico v. Lett*, 559 U.S. 766, 779 (2010), "deference does not imply abandonment of or abdication of judicial review . . . ." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *see also Goudy v. Basinger*, 604 F.3d 394, 399 (7th Cir. 2010) ("[A] decision involves an unreasonable determination of facts if it rests upon fact-finding that ignores the clear and convincing weight of the evidence.").

This is, and was meant to be, an "intentionally" difficult standard to meet. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "To satisfy this high bar, a habeas petitioner is required to 'show

4

that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

### B. Involuntary Confessions

Swanton contends that the circuit court should have suppressed his statement to police where he confessed to Hansen's murder. Dkt. No. 1 at 6. He asserts that the statement was involuntary because police told him that the interview would be his last opportunity to tell his version of events, which he contends meant that if he did not tell police what happened he would be unable to tell a jury later at trial. *Id.*

The Due Process Clause of the Fourteenth Amendment forbids the admission of an involuntary confession in evidence in a criminal prosecution." *Dassey v. Dittmann*, 877 F.3d 297, 303 (7th Cir. 2017) (citing *Miller v. Fenton*, 474 U.S. 104, 109 (1985)). "A confession is voluntary if it is the product of a rational intellect and free will and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will." *Hicks v. Hepp*, 871 F.3d 513, 527 (7th Cir. 2017) (internal quotation marks and citation omitted). The voluntariness of a confession is based on the totality of the circumstances surrounding the confession. *Schneckloth v. Bustamonte*, 423 U.S. 218, 223 (1973). Courts also consider "the defendant's age, education, intelligence level, and mental state; the length of the defendant's detention; the nature of the interrogations; the inclusion of advice about constitutional rights; and the use of physical punishment, including deprivation of food and sleep." *Id.* (citation omitted). The key question in determining whether a statement is involuntary within the meaning of the Due Process Clause is whether there was police coercion. In *Colorado v. Connelly*, the

5

Court held that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." 479 U.S. 157, 167 (1986). "Absent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." *Id.* at 164.

The decision of the Wisconsin Court of Appeals is not contrary to, nor does it constitute an unreasonable application of clearly established federal law. Though the court did not directly cite *Connelly*, it did cite the Wisconsin Supreme Court's decision in *State v. Hoppe*, which expressly noted *Connelly*'s holding that "[c]oercive or improper police conduct is a necessary prerequisite for a finding of involuntariness." 2003 WI 43, ¶ 37, 261 Wis. 2d 294, 661 N.W.2d 407 (citing *Connelly*, 479 U.S. at 167). It was precisely that principle of law that the Wisconsin Court of Appeals applied in rejecting Swanton's claim that his confession was involuntary. Dkt. No. 13-5 at 3. The court explained:

> Here, we are not persuaded that police engaged in coercive or improper conduct in securing Swanton's statement. When considered in context, their representations to Swanton indicate that the interview, which was their second attempt to question him, would be his last opportunity to tell *them* his version of events. Police did not say, or even imply, that if Swanton did not tell them what happened he would be unable to tell a jury later at trial. Accordingly, we are satisfied that the circuit court properly admitted Swanton's statement.

Dkt. No. 13-5 at 3.

The court's findings of fact are not unreasonable in light of the evidence presented. Though there is some evidence that Swanton was under a state mental health commitment at the time of the interview, the testimony of Investigator Spaulding and the audio-video recording of the interview reveal no threats or coercive tactics by police. The officers were polite and respectful to Swanton, offered him a soft drink, and spoke with him in a calm and rational tone of voice over

6

the course of the approximately one-hour interview. Swanton agreed to answer questions after he was fully advised of his *Miranda* rights, and never asked for an attorney. There were no threats or promises made to elicit his confession, and his answers were direct, responsive, and revealed no signs of impairment or confusion. Dkt. No. 16.

Swanton initially denied recollection of the events and claimed he was having auditory hallucinations on the night of the murder, but as the interview continued he admitted stabbing Hansen to death at her apartment, removing some of his bloody clothing, and fleeing. Before he left the apartment, Swanton said he swallowed some pills that belonged to Hansen with the intent to commit suicide. When he got outside the apartment, he said he called 911 but hung up when the operator began asking questions and eventually collapsed in the snow where he was later found and taken to the hospital. Dkt. No. 16.

This evidence was more than sufficient to support the state court's determination that the police had not engaged in coercive or improper conduct to elicit the statement. Under § 2254, the state court's determination of a factual issue is presumed correct. § 2254(e)(1). The petitioner carries "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.* Swanton has not carried that burden. His sole argument is that the officers coerced his confession by leading him to believe that if he did not talk to them, he would be unable to testify at trial. But as the Wisconsin Court of Appeals noted, that is not what the officers said. They told Swanton it was his last chance to tell *them* his side of the story. Considered in context, the state court's conclusion was reasonable.

Investigator Spaulding informed Swanton that he was being arrested for the murder of Melissa Hansen. Spaulding stated that police had interviewed a lot of people and gathered a lot of evidence to establish probable cause to believe that Swanton had murdered Hansen. What he was

7

missing, Investigator Spaulding explained, was Swanton's side of the story, which might lead them to question whether the charge was appropriate. Investigator Spaulding told Swanton that it was important to give him an opportunity to explain what happened in the apartment so that if they were getting it wrong, he could correct them. Dkt. No. 16 at 17:31–43.

The facts of this case are far different from those in *Commonwealth v. Novo*, 812 N.E.2d 1169 (Mass. 2004), the principal case Swanton cited in state court in support of his contention that his confession was coerced. In *Novo*, the investigating officer told the defendant "[i]f you don't give us a reason right now why you did this, a jury's never going to hear a reason." *Id.* at 1172. Officers then told the suspect 12 more times that if he did not tell his version of events to the officers, a jury would never hear it. Based on this evidence, the trial court suppressed the defendant's statement, and the Supreme Judicial Court of Massachusetts affirmed. In so ruling, the appellate court rejected the Commonwealth's argument that the officers were merely telling the defendant it was his last opportunity to tell them his side of the story, finding it "belied by the officers' plain language." *Id.* at 1175. The court concluded that "the repeated misrepresentation of Novo's trial rights irretrievably tainted his confession." *Id.*

Here, by contrast, as the Wisconsin Court of Appeals noted, "Police did not say, or even imply, that if Swanton did not tell them what happened he would be unable to tell a jury later at trial." Dkt. No. 13-5 at 3. They told him only that he would not be able to tell police his side of the story. This is precisely the kind of statement the *Novo* court stated would have been permissible: "The officers in this case might have properly (and truthfully) told Novo, 'This is your only chance to talk to us,' or, 'This is your only opportunity to tell your story to us so that we can help you.'" *Id*. at 1175 n.5. The court explained: "It is the repeated use of misinformation

8

concerning a defendant's constitutional right to testify that rendered the interrogation in this case improperly coercive." *Id.*

No such misinformation was given here. Swanton was not told he would be unable to tell his story at trial. As a result, no violation of his constitutional rights has been shown. His petition for relief under § 2254 must therefore be denied.

## CONCLUSION

For the reasons given above, Swanton is not entitled to federal habeas relief on his claim. His petition for writ of habeas corpus is therefore **DENIED**, and the Clerk is directed to enter judgment dismissing the case. A certificate of appealability will be **DENIED**. I do not believe that reasonable jurists would believe that Swanton has made a substantial showing of the denial of a constitutional right.

Swanton is advised that the judgment entered by the Clerk is final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. *See* Fed. R. App. P. 3, 4. In the event Swanton decides to appeal, he should also request that the court of appeals issue a certificate of appealability. Fed. R. App. P. 22(b).

**SO ORDERED** at Green Bay, Wisconsin this 28th day of July, 2020.

s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge